HYDE, *Plaintiff in Error*, v. THE MISSOURI PACIFIC RAILWAY COMPANY.

Division One, May 23, 1892.

1.   **Railroads:** NEGLIGENCE: PRACTICE: NONSUIT.   Plaintiff, while walking at night on a track in the defendant's yards, was hit by a

freight car, moved without signals; *held*, in the circumstances stated in the opinion, that plaintiff was properly forced to a nonsuit, because the facts disclose no negligence on defendant's part.

2. ———: USE OF TRACK BY FOOTMEN: LICENSE. Where pedestrians use a railroad track as a thoroughfare, despite posted notices and other warnings forbidding it, a license for such use is not established.

3. ———: ———. The constitutional declaration that railways are "public highways" does not authorize the use of tracks by foot travelers.

4. Practice: DEMURRER. Where the evidence furnishes no substantial support to plaintiff's allegation of defendant's negligence, it is proper for the court to instruct the jury to find for defendant.

*Appeal from Pettis Circuit Court.* — HON. RICHARD FIELD, Judge.

AFFIRMED.

PLAINTIFF's action is for personal injuries, caused by alleged negligence of defendant. It is met by a denial of the negligence, and a charge of contributory negligence on plaintiff's part.

At a trial, the court instructed the jury that plaintiff was not entitled to recover, whereupon he took a nonsuit with leave, etc.

After unsuccessful motions to set that result aside, plaintiff appealed in due course.

His evidence established the following facts:

The defendant's railroad passes through Sedalia nearly east and west. Engineer street in that city crosses the defendant's tracks at about a right angle. Several blocks east of Engineer street is a parallel street known as New York avenue, crossing the tracks at nearly the same angle. The plaintiff's house was east of New York avenue in the triangle made by the tracks of the Missouri Pacific and the Missouri, Kansas & Texas railways, near their intersection. There is no street crossing between Engineer street and New York

avenue. Third street runs east and west nearly parallel with the railroad, a little distance south of it at Engineer street, but intersecting the railway line before reaching New York avenue.

The tracks are considerably higher than Third street. At the point of intersection, the railroad is on an embankment, about twelve feet high, and the street abuts against it, forming a large mud hole at that point, and making the adjacent street bad for travel in wet weather. On the north side of the railroad, east of Engineer street, is the train dispatcher's office. East and north of this are the Missouri Pacific shops, and east of these are the roundhouses. Heard's addition to Sedalia lies north and east of the tract of land upon which these several railroad buildings are situated.

It was admitted upon the trial] that Sedalia was a city of eighteen thousand population. It was further shown that, at the time of the accident, people were, and for a long time prior thereto had been, in the habit of using the tracks of the railroad company between Engineer street and New York avenue as a common passway; that employes in the shops and roundhouse so used the same, and that persons not connected with the road, men, women and children, also passed back and forth along these tracks, at all times in the day. But it affirmatively appeared from plaintiff's evidence, in the same connection, that defendant had objected to such use of the tracks, had posted signs there, warning people to keep off, and had had a special watchman to enforce those notices. Notwithstanding these objections many people continued to use the tracks as a thoroughfare as first stated.

Plaintiff himself admitted that the place where he was run over was "what is known as the railroad yards; it was not on any street at all."

The mishap took place about half past eight or nine o'clock P. M. of "a dark, drizzling, rainy night," in March, 1883. Plaintiff was a carpenter. On his way homeward, he came upon defendant's line at the Engineer street crossing, and thence walked on the track eastward some two hundred yards, when he was overtaken and hit by a freight car moving in the same direction. It was one of a train of three box cars, pushed by a "pony" or switching locomotive at the west end of the train. The engine had a headlight, pointed eastward, but its rays were considerable shortened and obscured by the cars. There were three switchmen on the train, but the evidence fairly justifies the inference that none of them was on the lookout for persons on the track, or gave any warning to plaintiff of the train's approach. A friend of plaintiff was walking by his side at the time, and was likewise struck by the car. Plaintiff's son was immediately behind them, but he heard the "clicking of the rails," and observed the danger in time to spring aside and avoid a collision. As he did so he called to his father, but without effect. When plaintiff was knocked down, the train came to a stop within the distance of about one car length.

The plaintiff was somewhat hard of hearing at times, before the accident. The son testified that none of the party carried an umbrella, though it was raining; and that he supposed a man could be seen that night a distance of twelve or fourteen feet. There was no light on the car that struck plaintiff.

Evidence was also introduced showing how far a person could be seen under ordinary conditions upon the track at the place where the injury occurred, and in what distance the train which caused the injury could have been stopped with the exercise of ordinary care.

On these facts the trial court forced plaintiff to a nonsuit, and against that ruling the pending appeal is directed.

*Geo. P. B. Jackson* for plaintiff in error.

The court erred in sustaining the demurrer to the evidence: (1) Because it was not necessary, in order to prove that those in charge of defendant's train saw the plaintiff in a dangerous position on the track, to present direct and positive evidence of that fact; all the circumstances were to be considered, and the jury could well have found from the evidence that those in charge of the train discovered the plaintiff's danger in time to have averted the injury. *Rine v. Railroad,* 100 Mo. 228–235. (2) The evidence established that it could not fairly be presumed that the defendant would have a clear track at the time of the injury to plaintiff, and that a knowledge of the place and its use, and the experience of the defendant in operating its trains over that part of the road, would cause the defendant to anticipate the presence of persons upon the track. The defendant was, therefore, liable for the injury to the plaintiff, either if his danger was actually discovered, or if by the exercise of ordinary care it might have been discovered in time to have averted the injury. *Brown v. Railroad,* 50 Mo. 461–7; *Isabel v. Railroad,* 60 Mo. 475; *Harlan v. Railroad,* 65 Mo. 24; *Frick v. Railroad,* 75 Mo. 610; *Scoville v. Railroad,* 81 Mo. 434; *Townley v. Railroad,* 53 Wis. 626; *Davis v. Railroad,* 58 Wis. 646; *Williams v. Railroad,* 96 Mo. 275; *LeMay v. Railroad,* 16 S. W. Rep. 1049.

*Wm. S. Shirk* for defendant in error.

The demurrer to plaintiff's evidence was properly sustained: (1) It is not alleged in plaintiff's petition,

but those in charge of the train discovered the appellant's danger in time to have avoided the injury. Nor is there any evidence from which such a deduction can be drawn. And if there was it would be wholly immaterial and irrelevant under the issues. This is apparent from an examination of the petition and evidence. Hence, *Rine v. Railroad*, 100 Mo. 228, is not in point. (2) Neither is it alleged in the petition that those in charge of the train could have discovered the appellant in time to have avoided the injury by the exercise of ordinary care. But, if it was, the evidence plainly shows that appellant was a trespasser in defendant's yards, and upon its track at a place and under circumstances which did not require the exercise of any care upon respondent's part to discover his presence. *Williams v. Railroad*, 96 Mo. 275; *Curley v. Railroad*, 98 Mo. 19; *Barker v. Railroad*, 98 Mo. 51; *Shaw v. Railroad*, 104 Mo. 648; *Rine v. Railroad*, 88 Mo. 392; *Corcoran v. Railroad*, 16 S. W. Rep. 411; *Hudson v. Railroad*, 101 Mo. 31; *Woodward v. Railroad*, 15 S. W. Rep. 178; *Bradley v. Railroad*, 16 S. W. Rep. 55; *Spicer v. Railroad*, 12 S. E. Rep. 553.

BARCLAY, J.—The circumstances of plaintiff's injury are fully shown in the statement of facts introducing the report of this case.

The accident occurred in the "yards" of defendant at Sedalia. It seems that many people were in the habit of walking along the tracks there, but the acquiescence essential to give such use the character of a license did not appear. It was plainly wanting. Defendant continuously objected to the practice, had notices posted forbidding it, and, for a time, had a special watchman to warn people away.

On such a showing, there is no just foundation for an inference that defendant consented to the use fre-

quently made of its tracks by individuals, despite its protests. So the plaintiff cannot be regarded as other than a trespasser on defendant's right of way, and especially in view of positive legislation on the subject, enacting that, "if any person not connected with or employed upon the railroad shall walk upon the track or tracks thereof, except where the same shall be laid across or along a publicly traveled road or street, or at any crossing, as hereinbefore provided, and shall receive harm on account thereof, such person shall be deemed to have committed a trespass in so walking upon said track in any action brought by him on account of such harm," etc. Sess. Acts, 1885, p. 89, same as R. S. 1889, sec. 2611.

The declaration in the constitution that railways in this state are "public highways" (Const. 1875, art. 12, sec. 14), in the connection in which it appears, obviously was not intended to throw them open as thoroughfares for pedestrians. Its object was to lay a foundation for certain kinds of legislative regulation of railways, but not to change the nature of the use of railroad property, or to divert it from the general purposes for which it was designed.

This case, however, does not require us to essay any exact definition of that constitutional language further than to hold that it did not confer on plaintiff any easement or right of foot passage along defendant's track at the time and place of his injury.

So far as this record discloses, no ordinance or other regulation for the giving of warning of movements of the train in question existed. The duty of defendant in the premises depends on the principles of general law only.

Even if it be conceded, for argument's sake, that defendant was bound to anticipate the presence of pedestrians at that point, by reason of their practice of

using the track, the most that could lawfully be deduced from that premise is that defendant should use ordinary care to avoid injuring them. That care is to be measured with a full view of all the surroundings. The prudence which should characterize a person of ordinary foresight and caution, in like circumstances, forms the standard to be applied.

There is nothing before us from which it might be inferred that defendant's employes on the cars saw plaintiff's peril before the catastrophe. The train was moving very slowly, as is shown by the fact that it was stopped within one car's length after plaintiff was hit.

Defendant, of course, had the right of way, and was not bound to anticipate that persons trespassing on the track would not step aside before a coming train. Nor was it negligence to run defendant's train as described, through its yards, without other lights than the hand-lanterns of the switchmen and the headlight on the locomotive, in the position already indicated. The car that struck plaintiff was a box car. An employe upon it would be at least ten feet above the level of the rails. The night was rainy, and so dark that a man could not be seen further off than fourteen feet.

Can it be fairly said that such a state of facts gives reasonable support to the charge of any want of ordinary care on defendant's part? We think not.

It is useless to prolong the discussion or assign further reasons for a conclusion so manifestly clear. Defendant does not appear to have violated any duty it owed plaintiff or the public; and, however greatly his misfortune is to be regretted, there is nothing about its occurrence to justify a court of law or triers of fact in imposing the burden of its consequences elsewhere than upon him who took the risk thereof when he proceeded to use the track as a pathway under the conditions

described. Where the evidence furnishes no substantial support to plaintiff's allegation of defendant's negligence, there remains nothing to try, and it is then highly proper to instruct the jury to find for the defendant.

The trial court correctly held that the facts narrated gave plaintiff no right of action. Its judgment is affirmed. Chief Justice SHERWOOD and BLACK and BRACE, JJ., concur.