Knapp v. Hanley.

---

## KNAPP, Appellant, v. HANLEY, Respondent.

**St. Louis Court of Appeals, November 29, 1904.**

1. **PRACTICE: Demurrer to Evidence.** Where there is any substantial evidence though slight, whether direct or inferential, tending to establish matters in issue, the issue must be submitted to the jury.

2. **AGENCY: Joint Employment: Commissions.** Where two agents were employed to negotiate the sale of corporate stock, and acting together effected the sale and completed the transaction, though one of them only agreed with the principal upon the amount of compensation to be paid for such service and no special agreement regarding a division of the commission was proved, it was a question for the jury whether an agreement to equally divide such commission could be inferred from the circumstances.

3. ————: ————: **Presumption.** Where the evidence expressly disclosed a joint employment and undertaking on the part of agents, in the absence of a distinct separate agency, the authority conferred and the rights acquired thereby are presumed to be joint.

4. ————: ————: **Equal Shares.** Parties engaged in a single undertaking share equally the same as partners, in the absence of an express agreement to the contrary.

5. **EVIDENCE.** In an action by one of two joint agents against the other for a share of the commissions on a sale made by them, conversations between the plaintiff and the principal, in the absence of the defendant, were inadmissible.

Knapp v. Hanley.

Appeal from St. Louis City Circuit Court.—*Hon. J. R. Kinealy,* Judge.

REVERSED AND REMANDED.

*Vernon W. Knapp* and *John A. Harrison* for appellant.

(1) Whether there was a contract in legal effect such as that alleged in the petition was a question of intention, whether the minds of the parties met upon or with such an understanding between them, to be determined by the jury under all the facts and circumstances of the case. The case should, therefore, have been submitted to the jury. Mosby v. Commission Co., 91 Mo. App. 500; Thurston v. Thornton, 5 Mass. (1 Cush.) 89; Bornstein v. Lans, 104 Mass. 214; Savory v. Ingersoll, 2 N. Y. State 218; Devries v. Haygood, 64 N. C. 83. (2) There was evidence to sustain the petition, and the case should therefore have gone to the jury. Where authority is conferred upon two or more agents to represent their principal in the transaction of business of private nature, it is the rule that such an agency will be presumed to be joint. Mechem on Agency, sec. 76. (3) When, however, the authority was not conferred by written instrument and the facts are in dispute, it is for the jury to determine under proper instructions, not only whether an agency exists, but if so, what is its nature and extent. Mechem on Agency, sec. 106. 1 Parsons on Contracts (6 Ed.), page 11. 1 Beach on Contracts, sec. 668; Elliott v. Bell, 37 W. Va. 834; 7 Am. Ency. of Law, 104.

*Jones, Jones & Hocker* and *H. Chouteau Dyer* for respondent.

(1) The evidence offered by plaintiff failed to establish the cause of action alleged in the petition. The

instruction in the nature of a demurrer was therefore properly given. Charles v. Patch, 87 Mo. 450; Hyde v. Railway, 110 Mo. 272, 19 S. W. 483. (2) "When the plaintiff's own evidence is inconclusive, and that of his other witnesses fails to support the issue on his part, but rather that of the opposite party, there is not sufficient evidence of the issue to be submitted to the jury." Rottman v. Pohlman, 28 Mo. App. 399; Wheedon v. Ames, 28 Mo. App. 243. (3) The evidence fails to disclose any agreement on the part of Hanley to pay Knapp anything, nor does it disclose facts out of which such a contract could be implied. Green v. Cole, 103 Mo. 70, 15 S. W. 317; Robinson v. Estes, 53 Mo. App. 582; Brewington v. Misker, 51 Mo. App. 348; Fitch v. Snedaker, 38 N. Y. 248; Eastwood v. Kenyon, 11 Ad. & E. 451; Hughes v. Ewing, 162 Mo. 261, 62 S. W. 465.

REYBURN, J.—In April, 1902, the Mercantile Trust Company and Mississippi Valley Trust Company were severally seeking the control of the Wiggins Ferry Company, and by their competitive purchases the value of the stock had been greatly advanced, and as the contest for acquisition of a majority of the stock progressed between these rival financial institutions, which succeeding events disclosed were in truth the aggressive representatives of powerful railroad organizations, the stock remaining undisposed of and subject to purchase was lessened by acquisitions of the contending interests and its ownership became more important to each as decisive of the control of the corporation, and extravagant and widely varying high prices were paid to and obtained by those stockholders who had not sold or committed themselves to sale by prior agreement. Charles Mulliken, residing in the State of Virginia, was at such period owner of 107 shares, and plaintiff Knapp, his maternal uncle, was his regular business agent in St. Louis who handled

and transacted his affairs in that city. Mulliken had received an offer by telegraph for this stock from the president of the Ferry Company, which he stated he had accepted conditionally by telegraphic response. On the morning of April 28th, plaintiff had sold 200 shares of the same stock to the Mississippi Valley Trust Company on behalf of plaintiff's mother at the rate of $600 per share, and obtained a like offer from it for her son's stock while occupied in consummating sale of the mother's stock, but had merely reserved to the son the right of accepting such offer at his option, plaintiff assuring such would-be purchaser that it would be favored and receive the preference in disposal of the stock. On April 27th, plaintiff communicated by wire with Mulliken, warning him against making sale or agreement of· sale of his stock until his arrival in St. Louis, and advising him to come at once. which he did ·by the first through train, arriving in St. Louis about noon April 29th. On the evening of the twenty-eighth of April, Hanley, defendant, then personally unacquainted with plaintiff or Mulliken, having ascertained that Knapp, as agent of Mulliken, was engaged in negotiations for sale of the latter's stock, accompanied by his attorney, met Knapp at the threshold of Knapp's dwelling and the attorney introduced the parties hereto to each other, with the statement that they were about to visit Knapp respecting the Wiggins Ferry Stock; thereupon representing that he had "means of obtaining the inside figures about what the stock was doing." Hanley asked appellant to permit him to aid him in the sale of Mulliken's stock, to which appellant consented, and they agreed to meet Mulliken on his arrival the day following and co-operate in the sale of the stock for him. Pursuant to such understanding upon Mulliken's arrival, he was met at Union Station by his mother and Knapp, and they drove in a carriage to Hanley's office where, after discussing the matter in hand of effecting a sale of the stock to best

advantage, they re-entered the carriage and started to an office at No. 417 Pine street, Hanley alighting en route to visit the Mercantile Trust Company, but subsequently rejoining Knapp and Mulliken at such office, Mulliken meanwhile having secured the certificates of his stock from the safe deposit box where they had been lodged for safe-keeping. Hanley left the party to ascertain if the Mercantile Trust Company would make an offer for the stock, and on his return he informed them the president of that trust company declined to make any proposition, and he (Hanley) recommended, that the sooner they made the sale to the other trust company the better, so they decided to proceed to the Mississippi Valley Trust Company for such purpose. Hanley had vainly sought a private consultation with Mulliken by inviting him into the hall. Before starting, however, Knapp momentarily left the office in search of pen and ink for Mulliken's use in indorsing the certificates and afforded Hanley the opportunity he desired and during such temporary absence, respondent asked Mulliken what was the highest price he wanted for the stock, to which Mulliken made the logical answer, as much as he could obtain, and in reply to a further question by Hanley he answered he wanted $800; Hanley thereupon said: "Will you divide all above that amount and ask no questions?" to which Mulliken responded in the affirmative. Knapp at that stage of the conversation between the two, returned to the office, and Knapp and Hanley then repaired to the office of the Mississippi Valley Trust Company to see what they could accomplish, Mulliken rejoining them before the consummation of the sale presently effected. When Knapp and Hanley reached the place of business of the Mississippi Valley Trust Company, they resumed negotiations for sale of the stock with a director of the Ferry Company, an ally of the Trust Company, who was introduced to Hanley by Knapp, who explained they were present about Mulliken's stock, stating

both represented him, Hanley adding he would sell at $900 per share; at this juncture the vice-president of the Trust Company, also its general counsel, accompanied by an officer of the railroad corporation represented by such Trust Company in the acquisition of the ferry stock, were invited into the conference, an agreement prepared and entered into between Mulliken and the Trust Company, providing for the sale of the stock at $900 per share coupled with an understanding on part of the Trust Company to indemnify Mulliken against loss, expense or damages he might incur by not selling and delivering the stock to the president of the Ferry Company or the Mercantile Trust Company, Mulliken's name being attached thereto personally and by Hanley as well, and the sale was perfected by delivery of the stock certificates to the Trust Company, Mulliken in payment receiving from Hanley two checks, one to his own order at rate of $200 per share and one to Mulliken's order at rate of $700 per share. Hanley indorsing the first to Mulliken and explaining the Trust Company had not paid exceeding $700 for stock. Hanley and Mulliken then went to the St. Louis Trust Company, where Mulliken deposited both checks, aggregating $96,300, and handed Hanley his check for $5,350, being the amount of $50 per share on 107 shares in accordance with the oral agreement to divide all above $800 per share, that the stock would sell for. On the evening of the same day Knapp and Mulliken met in the street car, the latter informing him he had paid Hanley as above narrated and Knapp responded that if any commissions had been paid, he was entitled to one-half such commissions. Knapp was thus first advised of such payment of commissions and the day following he communicated with Hanley by telephone, making claim to one-half the amount received in which Hanley acquiesced, and promised to send check, but requested Knapp to wait two or three days, to which appellant assented, the conversation ending

with statement by Hanley that Mulliken had assured him he (Mulliken) would not tell any one of payment of such commissions and Knapp retorted that as he represented Mulliken, the latter could not avoid informing him (Knapp) and Mulliken had paid Hanley for both of them. On the same day Hanley reproached Mulliken for imparting such information to Knapp and replying Mulliken stated Knapp was his agent in that matter, as he was in all business matters, and he of course told him but no one else, and Hanley answered it made him give appellant twenty-six or twenty-seven hundred dollars, but he would pay Knapp half of what he received even if it had to come out of his own pocket.

Plaintiff's petition declared upon an agreement of plaintiff and defendant with Mulliken, whereby the latter agreed to pay plaintiff and defendant for their services in course of rendition and to be rendered by them for him in the proposed sale of his 107 shares of stock of the Ferry Company, one-half of whatever he should sell his stock for, exceeding the sum of $800 per share, and an agreement between plaintiff and defendant to perform such services and to divide equally between themselves all compensation Mulliken should pay therefor; the petition continuing, charged that plaintiff and defendant performed the services, that the stock was sold for $900 per share, Mulliken receiving $96,300 for his 107 shares, and plaintiff and defendant became entitled to receive from Mulliken the sum of $5350 of which plaintiff and defendant were each entitled to receive one-half, that is, $2,675 each; that Mulliken had paid the whole amount to defendant, who had failed and refused to pay plaintiff his share, for which judgment was asked.

In his defense, defendant pleaded a general denial and at close of plaintiff's testimony, of which the foregoing narrative is a condensed but substantial recital, the court gave an instruction, tendered by de-

fendant, declaring that under the pleadings and the evidence in the case, plaintiff was not entitled to recover, forcing plaintiff to an involuntary nonsuit, from which plaintiff has prosecuted his appeal.

The rule has been reiterated with frequency in this State, that a demurrer to the evidence admits all facts the evidence tends to prove and in passing upon it, the court is required to indulge in every inference of fact in favor of the party introducing the evidence, which a jury might deduce in his favor, with any degree of propriety and reasonableness and when there is any substantial evidence, though slight, whether direct or inferential, tending to establish the matters in issue or any evidence from which the ultimate facts may rationally be inferred, it is incumbent on the court to submit such issue to the jury, leaving the jury to determine the credibility of the witnesses and the weight and sufficiency of the proof submitted; where, on the other hand, the evidence furnishes no substantial support of the allegations of plaintiff's petition, nothing remains for submission to the jury and the case is properly the subject of direction to the jury to find for defendant. Rice v. Sally, 176 Mo. 107, 75 S. W. 398; Hyde v. Railway, 110 Mo. 272, 19 S. W. 483; Charles v. Patch, 87 Mo. 450; Mosby v. McKee, 91 Mo. App. 500. The converse or corollary of this rule, that where the evidence is of such character, that in event of a finding for plaintiff in any given case under the evidence, the trial judge would be compelled to set aside the verdict as without being supported by the evidence, has been as repeatedly announced. Hite v. Railway, 130 Mo. 132; Asphalt Co. v. Transit Co., 102 Mo. App. 469. The evidence in this proceeding as far as developed by plaintiff, established beyond dispute that Hanley, apprised of the agency of appellant and the general authority in Mulliken's business affairs, usually exercised by and conferred on Knapp, invited the latter to permit him to co-operate with appellant

in consummating the sale of Mulliken's ferry stock, negotiations looking to the sale of which Hanley knew Knapp had inaugurated and was then conducting, pending Mulliken's arrival, and that Mulliken thereupon on arrival in the city extended the sole authority theretofore of appellant to represent him in disposing of the stock, to comprehend respondent and constitute them together his joint agents for the same purpose; that they attended the business place of the purchaser in the accomplishment of such common end, stating to its agents and officers, that they were present in such capacity of representatives of the owner of the stock, and they proceeded together, acting jointly and both participating to complete, as such joint agents, the transaction, which terminated in the satisfactory sale, Hanley naming the price demanded and ultimately obtained, and Knapp preparing, with aid of stenographer, the agreement of sale and indemnity, Hanley making delivery of the stock certificates and receiving the checks in payment. That such testimony constituted substantial evidence of the allegations of the petition and requiring the submission of the case to the jury would seem beyond discussion. The law did not devolve on plaintiff in the trial to establish the agreements declared on by express contracts of the parties, but it was legally sufficient to exhibit a state of facts from which such agreements might reasonably be inferred by the jury. The evidence expressly disclosed a joint employment and undertaking, but by legal implication, in absence of distinct separate agency the authority conferred and rights acquired thereby are presumed to be joint; words of express joinder are not essential but language of severance must be employed and be present to produce several responsibility or right. 1 Parsons, Contracts, p. 11; 1 Beach, Contracts, sec. 668. Especially where the authority exercised was not delegated by the principal by written instrument and the facts are controverted, the existence, scope and

character of the agency, under proper instructions, is the subject of consideration by the jury. Mechem, Agency, sec. 106. Their special joint agency created by Mulliken, not merely delegated joint authority, but operated to confer joint rights, and established a joint interest in the parties hereto in the transaction and in all profits resulting therefrom, and in absence of distinct agreement, decisive of a different allotment the interests of each were the same and equal. As a consequence of such joint agency, the law exacted from them the highest degree of good faith, not only toward their principal, but also in all their dealings with each other and implied an agreement for an equal division of the compensation paid for their joint services by their common principal in their joint employment. The rule of law that the shares of partners are equal unless made otherwise by express agreement, is as applicable to parties engaged in a single joint undertaking as to persons associated in general business together. Wetmore v. Croucy, 150 Mo. 670. We know of no principle of law that would commend or lend countenance to the position sought to be sustained by Hanley where, assuming the facts to be as disclosed by the record at the stage the case has arrived, in absence of explanation or version by him, having received the entire compensation for the work performed jointly and in co-operation by Knapp and Hanley under a joint employment by the same principal, Hanley would appropriate the whole amount and exclude his associate of any participation by virtue and under cover of a secret understanding had with the common principal and affecting the subject and purpose of the joint agency.

2. Appellant offered to testify to statements made to him by Mulliken in driving to the office on Pine street, after respondent had left for the Mercantile Trust Company, and to conversation of Knapp with Mulliken while engaged in communication by telephone with Hanley, but of course in his absence,

and again to prove the latter conversation by Mulliken himself, all of which were properly excluded by the trial court as statements exchanged between Knapp and Mulliken in absence of and not known to Hanley and, therefore, not affecting him.

Judgment reversed and cause remanded. All concur.