[Civ. No. 435. Fourth Appellate District.—November 13, 1930.]

ROGER M. ANDREWS, Plaintiff and Appellant, v. GRANT A. BUSH, Defendant and Appellant.

Edgar A. Luce and Sloane & Sloane for Plaintiff and Appellant.

Wright & McKee and C. M. Monroe for Defendant and Appellant.

CARY, P. J.—Plaintiff brought this action against defendant alleging in his amended complaint the existence of a joint adventure between them regarding a real estate deal, that the joint adventure had been completed and certain profits made, all of which had been retained by defendant, and asked for an accounting. Defendant's answer denied the allegations of the complaint, and alleged that the action was barred by the provisions of subdivision 1 of section 339 of the Code of Civil Procedure and that plaintiff was estopped to claim any share of the profits.

The court found for the most part in accordance with the allegations of the amended complaint. It further found, however, that in one particular the minds of the parties did not meet—plaintiff believing he was to receive back all moneys advanced by himself with interest and in addition thereto one-half of all profits—defendant believing and thinking that plaintiff believed that all sums received from the deal were to be divided equally without any reimbursement to plaintiff for the money he had originally advanced. The court adopted the latter of these two methods for its accounting, found plaintiff's share to be $8,270.77, that the action was not barred by the statute of limitations, that plaintiff was not estopped to claim his share of the profits and gave judgment for plaintiff for $8,270.77.

Defendant urges that the judgment be reversed for the following reasons: (1) since the minds of the parties did not meet on how the net profits were to be arrived at, there was really no agreement for a joint adventure and all plain-

tiff was entitled to was the return of his $5,000 investment which, as the evidence shows, he had already received prior to the institution of this action; (2) that even if it be conceded that a joint adventure was originally created nevertheless the undisputed testimony shows that the joint adventure had been terminated and plaintiff had made no attempt thereafter to comply with the terms of the joint adventure agreement, thus forfeiting his right to participate in any profits; (3) that even though it be conceded that plaintiff's termination of the joint adventure agreement was brought about by defendant's concealment from him of certain facts, that situation only gave rise at the most either to a right of action by plaintiff for breach of the joint adventure agreement which, not having been brought within two years, was barred by the provisions of subdivision 1 of section 339 of the Code of Civil Procedure or to a right of action by plaintiffs for fraud—an issue not raised by the pleadings; (4) that the uncontradicted evidence shows that plaintiff is estopped to claim any of the profits of the joint adventure and (5) that certain findings are unsupported by the evidence.

The facts follow. A certain tract of land lying east of the city of San Diego was owned by the El Cerrito Park Company. February 16, 1926, defendant obtained an option to purchase this tract by the terms of which $2,500 was to be paid ten days after date, another $2,500 fifteen days later, and $20,000 ninety days later, at which time a mortgage securing the remaining $175,000 of the purchase price was to be executed. The option was informal, consisting merely of a letter addressed to the El Cerrito Park Company by defendant, at the bottom of which the company had indorsed a statement that its board of directors had sanctioned the acceptance of the proposal contained in defendant's letter. Within a few days after the execution of this option one Smith, a Los Angeles subdivider, approached the El Cerrito Company and attempted to buy the tract but was informed that defendant had an option on it. Knowledge of Smith's interest in purchasing the land soon reached defendant and negotiations were begun between them, but the first payment under the option fell due before these negotiations had progressed very far. February 26th, the last day this first payment could be made, defendant went

to the bank where he did business and attempted to borrow $2,500 on the option in order to make this first payment. Plaintiff, executive vice-president of that bank, to whom he explained the matter, informed him that it was not a bankable loan. Defendant then told plaintiff that Smith was ready to purchase the property, that it could be sold to him at a good price and that if plaintiff would personally advance the money necessary to meet the option payments they could both make a good profit. Plaintiff consented to go in, made out his personal check for $2,500 to defendant "Grant A. Bush, Trustee", and defendant immediately used the money to make the first payment called for under the option. The testimony is in sharp conflict as to just what each was to receive should the deal prove profitable. According to plaintiff's version, the money he advanced was to be returned to him with interest first, and all over was to be divided equally between them. Defendant on the other hand testified that all sums received from the deal were to be divided equally between them without any reimbursement to plaintiff for his advances. A few days after this first payment plaintiff and defendant met in the office of plaintiff's attorney to draw up an agreement defining the terms of their joint adventure. Both plaintiff and his then attorney testified that at this conference the attorney was instructed to prepare a written agreement calling, among other things, for the repayment to plaintiff with interest of the $25,000 which he was to advance and then an equal division between plaintiff and defendant of any profits they might make out of the option and that defendant raised no objection to the terms of the proposed agreement. This agreement was drawn up by plaintiff's then attorney, submitted to and approved by plaintiff, and by him submitted to defendant who, stating that he desired to consult his own attorney, delayed executing it. For reasons which can only be surmised defendant never executed the written agreement regarding the joint adventure. In the meantime defendant had again contacted his prospective purchaser Smith and informed him that before making a final proposition he, defendant, would have to get rid of his partner in the deal but defendant would not tell who his partner was. The effect of defendant's attitude on Smith is graphically de-

scribed by the statement in Smith's testimony "There apparently was always a mystery over the thing that created a suspicion in my mind." At this stage of the proceedings the second option payment fell due. Plaintiff again made out his personal check to defendant "Grant A. Bush, trustee" for $2,500 and defendant used this money to make the second payment. There was now a period of ninety days ahead of them before the next payment fell due. Defendant resumed his negotiations with Smith and on April 8th, without plaintiff's knowledge, accepted Smith's offer to purchase a half interest in the option for $27,500. A formal escrow based on the informal option was opened on April 24th to which El Cerrito Park Company was a party and at this time out of the $27,500 purchase money for the half interest in the option Smith put up in the escrow $20,000 with which to meet the third payment required by the option. The $7,500 balance of the price Smith had agreed to pay defendant for a half interest had already been paid direct to defendant. Two days later defendant went to the plaintiff and told him "The deal with Smith has fallen down, all I was able to save out of the wreck was $5,000, I am through with the real estate business. Under the circumstances you are lucky to get your $5,000 back." Relying upon the truthfulness of these statements plaintiff consented to and did receive back from defendant his investment of $5,000. A week or so after plaintiff had received back his $5,000 he got wind of the fact that defendant still retained some sort of an interest in the deal and on May first wrote defendant a letter in which he said in part:

"If you had been Andrews and I had been Bush, would you feel fully satisfied with the termination of our El Cerrito deal?

"If the answer is 'Yes', then put this in the waste basket, and forget it, as I will. . . .

"The matter as now concluded has refunded my $5000, which they had for 60 days, has provided otherwhere the $25,000 required for the first year, and saved intact your half interest without liability and without investment.

"Your ability obtained the favorable option.

"My investment protected it until you made a better deal.

"From the transaction you gained a valuable holding on a future prospect.

"I gained nothing.

"Would you feel that it was a Golden Rule settlement if you were Andrews and I were Bush?"

Defendant paid no attention to this letter, but after several telephone calls finally came in to see plaintiff and said: "All I have been able to get out of Smith is $5,000. Smith is going on with the deal and pay the remaining $20,000 when it is due in June. Smith has taken over all of the interest and I am through." At some time apparently between May 1st and the time defendant sold the remaining half interest in the option he expended some $900 in the way of taxes, etc., on the property. Thereafter defendant sold the remaining half interest in the option to Smith for $20,000. Plaintiff left San Diego to reside in the east some time during the year and made no attempt to follow up the matter until December, when his attorneys wrote defendant demanding an accounting and this being refused this action was instituted April 8, 1927. At the trial the defendant produced no witnesses other than himself while plaintiff placed on the stand every person who had knowledge of the transaction, including Smith.

Does the fact that there was no meeting of the minds of the parties on the precise method by which profits should be determined, result in there being no joint adventure and thus no right in plaintiff to obtain an accounting? ▮ The law requires little formality in the creation of a joint adventure (*Anderson* v. *Blair*, 202 Ala. 209 [80 South. 31, 35]). Such an agreement is not invalid because of indefiniteness in respect to its details. (33 C. J. 848.) Thus a partnership, which in many respects is similar to a joint adventure (*Menefee* v. *Oxnam*, 42 Cal. App. 81, 85 [183 Pac. 379]), is none the less a partnership though there be no definite agreement as to how the profits shall be divided (*Doudell* v. *Shoo*, 20 Cal. App. 424, 438 [129 Pac. 478]). Likewise, with a joint adventure. (*Hoge* v. *George*, 27 Wyo. 423 [18 A. L. R. 469, 200 Pac. 96, 99]; *Goss* v. *Lanin*, 170 Iowa, 57 [152 N. W. 43, 46].) In considering whether or not a relationship such as that of joint adventurers or partners has been created the courts are guided not only by the spoken or written words of the contracting parties, but also by their acts. (*Niroad* v. *Farwell*, 11 Cal. App. 767, 769 [106 Pac. 252]; *Bartelt* v. *Smith*, 145 Wis. 31

[Ann. Cas. 1912A, 1195, 129 N. W. 782, 783]; *Jackson* v. *Hooper*, 76 N. J. Eq. 185 [74 Atl. 130, 136]; *Knapp* v. *Hanley*, 108 Mo. App. 353 [83 S. W. 1005, 1008]; *Saunders* v. *McDonough*, 191 Ala. 119 [67 South. 591, 593]; *Reece* v. *Rhoades*, 25 Wyo. 91 [165 Pac. 449, 453]; *O. K. Boiler Co.* v. *Minnetonka Lumber Co.*, 103 Okl. 226 [229 Pac. 1045, 1047, 1048]; *Doan* v. *Dyer*, 286 Fed. 339, 341.) ▊ From the facts in the case at bar there is no question but that the parties intended to go into the deal together. so that each might derive profit therefrom. Under the authorities above cited the fact that there may have been a misunderstanding as to how the profits were to be determined does not prevent the parties from having assumed the relationship of joint adventurers. In defendant's reply brief he modifies the contention made in his opening brief and contends that there was no mere failure of the parties to understand each other, but rather an open disagreement as to the division of the profits and that hence defendant was within his rights in returning plaintiff's money and terminating the relation. Such contention, however, while testified to by defendant, was not upheld by the findings of the court.

Was the joint enterprise terminated when the plaintiff received back his $5,000 and did he then lose all right to any profits accruing thereafter? Defendant urges that this question should be answered in the affirmative, arguing that the evidence shows, without conflict, such a termination and he relies particularly upon the letter written by plaintiff to defendant of May 1st, quoted above. He urges that, regardless of the circumstances of the termination of the relationship, nevertheless it was terminated, that plaintiff never put up the last $20,000 installment and therefore was not entitled to an accounting for any future profits. Plaintiff replies to this argument that a termination of such relationship brought about by fraudulent concealment of the actual facts is no termination at all.

▊ The relationship of the parties being that of joint adventurers, their duty and liability as between themselves was that of fiduciaries. (*Reece* v. *Rhoades*, 25 Wyo. 91 [165 Pac. 449, 453]; *McMillen* v. *Olmsted*, 85 Cal. App. 656, 664 [259 Pac. 1104]; *Menefee* v. *Oxnam*, 42 Cal. App. 81, 85, 86 [183 Pac. 379]; *Munson* v. *Fishburn*, 183 Cal. 206, 211

[190 Pac. 808]; *Humburg* v. *Lotz,* 4 Cal 438, 442 [88 Pac. 510]; *Lomita Land Co.* v. *Robinson,* 154 Cal. 36, 50 [18 L. R. A. (N. S.) 1106, 97 Pac. 10]; *King* v. *Wise,* 43 Cal. 628, 633, 634; *Dennis* v. *Gordon,* 163 Cal. 427, 433 [125 Pac. 1063].) The defendant was charged with the duty of acting in the highest of good faith towards plaintiff and of refraining from taking any advantage of him. Not only did defendant violate this obligation, but, realizing that he was on the threshold of disposing of the property successfully at a profit, he sought to discourage his coadventurer by falsely stating that all prospect of success had vanished and that plaintiff would be exceedingly fortunate to recover back from the ''wreck'' his $5,000 original investment. To allow defendant under these circumstances to claim that the alleged termination of their relationship forfeited all plaintiff's rights to share in the profits would be to enable defendant to enrich himself by the violation of his fiduciary obligation, a situation at once obnoxious to the principles of equity. (*Richards* v. *Fraser,* 122 Cal. 456, 460 [55 Pac. 246]; *Llewelyn* v. *Levy,* 157 Cal. 1, 37, 38 [106 Pac. 219].) We, therefore, hold that the alleged termination of the relationship, procured by the means that it was, did not in fact result in forfeiting plaintiff's rights in the profits of the joint adventure.

Defendant contends that the plaintiff is estopped to assert any right to the profits accruing from the relationship. As grounds for this assertion, he states that plaintiff acquiesced in the termination of this agreement, accepted the return of all money which he had advanced, admitted in writing that the arrangement was terminated, stood by, allowing defendant to alter materially his position, allowed Smith to advance $20,000 which should have been advanced by plaintiff and allowed defendant to expend for taxes, etc., $958.45, and that defendant's change of position as brought about by plaintiff's acquiescence now renders it inequitable to allow plaintiff to reverse his position, assert his right to the profits, and recover same. To this line of argument there are at least two answers. First, the evidence fails to show any detriment suffered by defendant. Second, to hold that plaintiff was estopped would, in itself, work an injustice. Were defendant's contention regarding estoppel to be sustained it would be equivalent to holding that

where one has by violation of his duties as a fiduciary succeeded in ousting his associate from a profitable business deal, the guilty party could carry through the project, make a profit, and if, upon discovery of the facts, the innocent party laid claim to his share of the profits all the guilty party need say in defense would be: "I relied on your being out of the deal, went ahead and made a big profit for myself, and now it would not be fair to me to have to divide with you." There is no merit in defendant's contention.

■ Regarding the contention that the action is barred by the provisions of subdivision 1 of section 339 of the Code of Civil Procedure, defendant readily admits that the action for an accounting was begun within the time allowed by statute, but contends that the relationship of the joint adventurers having been terminated before any profits had accrued, plaintiff has no right to an accounting, that his only right of action is for damages for breach of the original joint adventure agreement, that since that agreement was not in writing such an action must be begun within two years from the breach of the agreement and that more than two years have elapsed between that time and the institution of this action. As we have held that plaintiff did not lose his right to an accounting no further consideration of this point is necessary.

■ Defendant contends that the findings are, in certain particulars, unsupported by the evidence. The first of these mentioned in his brief is the finding that plaintiff at all times was ready, willing and able to make payment of the $20,000 installment on the option. Even if there were no evidence to support this finding, which we do not concede, defendant, due to his own acts, cannot be said to be aggrieved by that fact. He next complains of the finding that the defendant exonerated plaintiff from any obligation to advance or contribute the $20,000. There is no merit to his complaint. The next finding attacked is "That the purposes and objects of said joint adventure have been fully performed." Defendant attacks this finding, claiming that the uncontradicted evidence shows that plaintiff did not make the $20,000 payment which he was obligated to make. But the defendant did unquestionably succeed in raising the $20,000 payment through the sale of plaintiff's

interest in the option and we regard that as equivalent in substance to a payment by plaintiff of that amount. Defendant's attack on the finding that defendant did not suffer any injury or prejudice by failure of plaintiff to claim profits prior to the time that he did so, has been answered in our consideration of his contention regarding estoppel. His assignment that the finding that the subsequent agreement between Smith, Bush and the El Cerrito Company was expressly founded on the writing of February 16, 1926, is without support in the evidence is without merit. On the contrary, it finds ample support, since the escrow agreement entered into by Smith and the El Cerrito Company contained the following: "This escrow being based on an agreement between G. A. Bush and El Cerrito Park Company dated February 16, 1926."

Plaintiff prosecutes a cross-appeal from the judgment, giving as his sole grounds therefor that the court erred in not allowing plaintiff his $5,000 investment with interest and also one-half of the profits remaining after such payment. We feel this point to be without merit for the reason that the court upon conflicting evidence expressly found that there was no meeting of the minds of the parties on that method of division of the profits.

We have carefully scrutinized the entire record and have read the numerous cases cited by counsel. In our opinion the case was tried fairly and the decision arrived at by the trial court was correct and finds ample support in the evidence.

The judgment is affirmed.

Barnard, J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 8, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 12, 1931.