[Civ. No. 3730.   Fourth Dist.   Mar. 3, 1949.]

FRED H. HAMMER, Respondent, v. RAYMOND E. WHITE
et al., Appellants.

Harold M. Child, Faries & McDowell, C. E. McDowell and Wayne R. Hackett for Appellants.

Stammer & McKnight, B. W. Kemper and Kendall & Howell for Respondent.

BARNARD, P. J.—This is an action to recover one-half of the proceeds resulting from a joint venture between the plaintiff and the defendant Raymond E. White, who will be referred to as the defendant and appellant.

On October 13, 1945, the defendant obtained from one Dodini a lease on certain property in the Helm field in Fresno County. On October 15, 1945, he assigned this lease to Pacific Western Oil Corporation and George F. Getty, Incorporated, reserving an 8 per cent overriding royalty. The defendant was assisted in making this lease by one Francis. The Pacific Western put up a sum of money, out of which Dodini was paid $12,000 and the balance was divided between White and Francis. White also assigned to Francis one-half of his overriding royalty or 4 per cent. Oil was thereafter produced on the property.

The plaintiff brought this action alleging in his complaint that on or about August 3, 1945, he and the defendant had associated themselves together as joint adventurers for the

purpose of acquiring, dealing in, selling and otherwise disposing of oil and gas leases, and sharing the proceeds equally; that the defendant acquired this Dodini lease pursuant to this joint venture and held said lease in trust for them both, share and share alike; that White assigned the Dodini lease to the oil corporations and received $20,000 plus an 8 per cent overriding royalty; that the plaintiff had fully performed on his part; and that White had assigned a portion of the royalty and money he received to Francis, who took with knowledge of plaintiff's rights. The prayer was for one-half of the proceeds and for judgment that the defendant held the lease interest in trust, for damages, and to quiet plaintiff's title to one-half of the royalty interest. The answer denied the existence of any joint venture agreement, denied that the plaintiff had any interest in the Dodini lease or any royalty thereunder, and denied that the defendant was under any obligation to the plaintiff. The Pacific Western Oil Corporation and George F. Getty, Incorporated were made defendants but the action was dismissed as to them under a stipulation whereby they agreed to impound any funds payable to White to await the outcome of the trial. Francis was also made a defendant but the action was dismissed as to him, his rights being conceded by the plaintiff, and the trial proceeded on plaintiff's theory that he was entitled to one-half of the net proceeds retained by White. Although the answer had not alleged that the joint venture agreement was illegal, the defendant brought out on cross-examination that the plaintiff was not licensed as a mineral oil and gas broker or salesman. A motion for a nonsuit on this ground was made and denied.

The court found that on or about August 3, 1945, the plaintiff and defendant had associated themselves as joint venturers for the purpose of acquiring an oil and gas lease from Dodini covering this particular property; that White acquired this lease pursuant to said joint venture and for the equal benefit of himself and the plaintiff; that White held an interest in this lease in trust for himself and the plaintiff, share and share alike; that White assigned the lease to the corporate defendants, receiving $20,000 and reserving an 8 per cent overriding royalty interest; that White paid Dodini $12,000 for the lease and pursuant to the joint venture agreed to pay Francis one-half of any consideration received in the sale of the lease; that under that agreement White paid Francis $4,000 and assigned to him a 4 per cent overriding royalty interest under the lease; and that the plaintiff has at all times been ready,

willing and able to perform, and has performed, each and all of his obligations under the joint venture. It was further found that the plaintiff is president of Red Star Petroleum Corporation; that this corporation produced 17,000,000 barrels of oil up to 1932; that plaintiff "from time to time" transferred oil leases to this corporation; and that the plaintiff intended to transfer any interest he might receive under the Dodini lease to the corporation. The judgment awarded the plaintiff $2,000, decreed that he is the owner of a 2 per cent overriding royalty under the Dodini lease and ordered the defendants to assign this interest to him, and awarded him one-half of any funds impounded by the corporate defendants which would otherwise be payable to the defendants. From this judgment White and his wife have appealed.

The appellant contends that the evidence is insufficient to support the findings that there was a joint venture between these parties for the purpose of securing this lease on the Dodini land, and that the appellant acquired this lease pursuant to said joint venture and for the joint and equal benefit of both parties.

While the evidence is conflicting, the following facts appear from the evidence, with the reasonable inferences therefrom. The appellant knew the Dodini land and that it had not been leased, but he was employed in Los Angeles in a position which prevented him from leaving that county. Early in 1945, he discussed the matter with respondent and asked him to help him secure financial assistance so that he could come to Fresno County to follow it up. The respondent made a number of efforts to secure the necessary financing but was unsuccessful. Appellant then told respondent that if respondent could get him a position in Fresno County he could get the Dodini lease. The respondent secured the appellant a position with Beverly Trading & Exploration Company, which brought them to Hanford. At that time both were working for that company on a salary, leasing lands in certain fields but not including the Helm field. While at Hanford the appellant attempted to get the Dodini lease, reporting his progress to the respondent. On August 3, 1945, the respondent was about to make a trip to San Francisco for their employer. The appellant asked him to try to raise some money to be used in securing the Dodini lease. The respondent then requested a definite understanding about his share in that venture. The appellant replied "It will be a 50-50 deal, and whatever we save out of it will be 50-50." They shook hands

on this agreement. The respondent was unsuccessful in raising money in San Francisco. Their work for the Beverly Company was completed about September 1, 1945, and they returned to Los Angeles. Shortly thereafter the respondent secured another job for the appellant, negotiating leases for one Roper. This work was to be done around Raisin City, about 14 miles from the Dodini land. While doing that work the appellant continued his negotiations with Dodini, discussing the matter frequently with the respondent and telling him that Dodini was hard to handle but that the appellant had a good chance of getting the lease. The appellant then enlisted the services of Francis, without the respondent's knowledge, and was successful in getting the Dodini lease which he later assigned to the two corporations. Thereafter, the respondent discovered what had occurred but the appellant refused to recognize that he had any interest in the property received. The trial court resolved the conflicts in favor of the respondent, it was to be a 50-50 deal in every respect, and the evidence, with the reasonable inferences, sufficiently supports the findings. (*Spier* v. *Lang,* 4 Cal.2d 711 [53 P.2d 138] ; *Andrews* v. *Bush,* 109 Cal.App. 511 [293 P. 152].)

█ The appellant further contends that the court erred in excluding certain offered testimony of Francis "relating to a different and separate joint venture between defendant White and Francis" and "relating to dissolution of the joint venture between plaintiff and defendant White." Francis was called as a witness and asked to testify as to various conversations between himself and Dodini in an effort to secure this lease, as to certain information he acquired from Dodini, as to whether he communicated this information to White, and as to whether the witness had not himself secured the Dodini lease with the assistance of White, taking the lease in White's name. Objections to these questions and to offers of proof were sustained. The appellant contends that this testimony would have had a bearing upon the question of whether White ever had a joint venture with the respondent, and also on the question as to whether such an alleged joint venture had been abandoned. Not only was this evidence hearsay as to the respondent, but the same facts, so far as material, were produced in the testimony of White. All of this was without the knowledge of the respondent, and the respondent had accepted the fact that White had employed Francis to assist him in putting over the deal, and conceded throughout that the payments made by White to Francis for

his services were a proper charge against the joint venture. The facts sought to be brought out by this witness, which were unknown to the respondent, would in no way tend to show a termination of the original joint venture between the respondent and the appellant. (*San Francisco Iron & Metal Co.* v. *American Milling etc. Co.*, 115 Cal.App. 238 [1 P.2d 1008].) The appellant concealed the facts from the respondent until after the entire deal was consummated, and there is no evidence which would have supported a finding that the joint venture in question was previously terminated. No error appears in this connection.

Appellant next contends that the judgment awarding the respondent certain proceeds of the joint venture is erroneous since the court failed to find that the alleged joint venture was ever terminated. Reliance is placed on the general rule that partners cannot sue one another at law in respect to the partnership business, the usual remedy being in equity for dissolution and accounting, and it is argued that a joint adventure is similar to a partnership in this respect. The court found that there was a joint venture only for the purpose of acquiring this Dodini lease. This lease was acquired by the appellant and assigned to other parties, certain proceeds being received by White. The purpose of the joint venture was accomplished, it was ended, and the appellant held the only possible proceeds thereof. The joint venture having been completed, and its purpose fully accomplished, it was terminated as to everything except the division of the profits. This was an equitable action, and the court did not err in entering a judgment in accordance with the facts found, expressly and impliedly. (*Keyes* v. *Nims,* 43 Cal.App. 1 [184 P. 695]; *Spencer* v. *Barnes,* 25 Cal.App. 139 [142 P. 1088].)

Finally, it is contended that if there was a joint venture agreement here it was illegal and unenforceable because the respondent was not then a licensed mineral oil and gas broker. It is argued that a license was here required under the provisions of section 10504 of the Business and Professions Code, that the respondent had no such license, and that he was forbidden to maintain this action for compensation by section 10508 of that code. The appellant relies on such cases as *Wise* v. *Radis,* 74 Cal.App. 765 [242 P. 90]; *Fewel & Dawes, Inc.* v. *Pratt,* 17 Cal.2d 85 [109 P.2d 650]; and *Hooper* v. *Barranti,* 81 Cal.App.2d 570 [184 P.2d 688], where recovery was refused for lack of a real estate broker's license, an insurance broker's license, and a liquor license, respectively. The test applied in

such cases is whether the plaintiff requires the aid of an illegal transaction in order to establish his case. If he cannot establish his case without showing that he has broken the law he may not recover. The appellant argues that, if there was a joint venture here, it clearly appears that it was for the purpose of leasing oil property and disposing of the lease at a profit.

■ Section 10501 of the Business and Professions Code, briefly stated, defines a mineral oil and gas broker as a person who buys, sells, exchanges or leases oil and gas property for another person and for compensation. Section 10506 provides that one such act of buying or selling or leasing oil property for another person for a compensation makes the person so doing a broker. It is not contended that the respondent comes within these provisions. However, section 10504, so far as material here, provides that such a broker, within the meaning of this part, includes any person who engages in the business of leasing oil property for the purpose of disposing of the lease, or any part, by sale, assignment, sublease or exchange. This section applies to a person who engages in that business for the specific purpose of assigning or transferring such a lease interest when obtained. There is no provision that one such act shall constitute the person performing it a broker, as is provided in the other case where a broker is defined as one buying or selling oil property for another person. Apparently, under the statutes one act of leasing and selling the lease is not considered sufficient in itself to make the person a broker, since the doing of one act might not establish the fact that he was engaging in such a business. ■ Moreover, section 10504 requires, in order to make one a broker within the meaning of the act, both that he engage in the business of leasing and that he do this for the purpose of selling or transferring the lease.

■ The respondent, as well as the appellant, had been employed on a salary to obtain leases for others and there is no evidence that they had been engaged in the leasing business for themselves after the adoption of these statutes. The court found that the respondent was president of an oil company which formerly produced oil and that he intended to transfer any interest he might receive in the Dodini lease to this company. His testimony was that he had used this company to take leases in its name, but there is no evidence as to when this occurred. Not only was this a single transaction, but the only evidence as to the agreement of joint venture was that it

was for the purpose of obtaining a lease upon the Dodini property. Nothing was said in the agreement, so far as shown by the evidence, with regard to selling or assigning any lease which should be obtained. It was merely agreed that ''whatever we save out of it will be 50-50.'' The appellant, in effect, sold a part of the lease but this was without the respondent's knowledge. There was nothing illegal about the joint venture at the time the lease was procured, the joint venture agreement did not provide for anything that would make it illegal, and the subsequent act of the appellant could not make it illegal insofar as the respondent is concerned. It was not necessary for the respondent to rely on an illegal transaction in order to prove his case, and he did not do so. The appellant assumed the burden of proof in this regard and failed to produce evidence which would necessarily show illegality in the transaction, as affecting the respondent. If it be assumed that the evidence would justify an inference of an illegal intention in the original agreement, a contrary inference is also possible and that view was adopted by the trial court. At best, no more appears than a conflict in the evidence.

The appellant argues that the respondent is bound by an allegation in his complaint to the effect that on or about August 3, he and the appellant associated themselves together as joint adventurers for the purpose of acquiring, dealing in, selling and otherwise disposing of oil and gas leases and using the proceeds for their mutual benefit. It is argued that this allegation in the complaint shows that, if a joint venture agreement existed, the parties intended to engage in such a business, within the meaning of section 10504. The answer specifically denied these allegations of the complaint. The court, in passing upon this issue, impliedly found that no such general agreement was made and otherwise found that a joint venture agreement was made solely for the purpose of acquiring the Dodini lease. Any possible admission in this allegation of the complaint merely added to the conflict which otherwise existed. The question was one of fact for the trial court and nothing appears in the evidence which compels a reversal of the court's findings thereon.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied March 28, 1949, and appellants' petition for a hearing by the Supreme Court was denied April 28, 1949.