[L. A. No. 2937.   In Bank.—August 5, 1912.]

# G. C. DENNIS, Appellant, v. F. V. GORDON, Respondent.

Appeal—Order Denying New Trial—Notice of Intention—Failure to Embody in Bill of Exceptions.—A copy of the notice of intention to move for a new trial, although printed in the transcript, if not authenticated by a bill of exceptions, cannot be considered as a part of the record on appeal from an order denying the motion.

Id.—Recitals of Grounds of Motion in Order Denying New Trial—Reference to Statement of Case—Bill of Exceptions Considered as Statement—Insufficiency of Evidence to Sustain Findings.—Where the order denying a new trial recites that the motion therefor was presented "upon all the grounds stated in the notice of intention to move for a new trial and upon the statement of the case heretofore settled," and the record on appeal fails to contain a copy of the notice, but does contain a bill of exceptions in which the insufficiency of the evidence to sustain the findings is specified, that document will be deemed to be the statement of the case referred to in the order, and the recital in the order will be sufficient evidence that the objections set forth therein were the grounds of the motion.

Id.—Absence of Showing of Service of Notice of Entry of Judgment—Review of Evidence on Appeal from Judgment—Time of Taking Appeal.—Where the record on appeal does not show that any notice of the entry of the judgment was ever served, the party wishing to take advantage of the fact that it was served, for the purpose of preventing a consideration of the evidence on appeal from the judgment taken more than sixty days after its entry, must show that such notice was served more than sixty days before the taking of such appeal, otherwise the appeal will be considered as having been taken under sections 941a, 941b, and 941c, of the Code of Civil Procedure.   In such a case, by sections 941b and 941c, the sufficiency of the evidence is reviewable in the same manner as if the appeal had been taken within sixty days of the entry of the judgment under section 939.

Partnership—Action for Accounting—Properties not Part of Firm Assets—Findings Sustained by Evidence.—In an action between partners for an accounting, it is held that the evidence does not sustain the contention of the plaintiff that the properties in controversy, although purchased by the defendant with his individual funds, belonged to the firm, for the alleged reasons that the defendant paid the consideration therefor in part by the performance of services in and about the properties, and thus his attention thereto prevented him from giving due attention to the firm business, and that he obtained the consent of the plaintiff that they should not be bought on

firm account by concealing from the plaintiff the real character of the property or by failing to inform him thereof, and that the trial court properly found that the same were not a part of the firm assets.

ID.—DUTY OF PARTNERS TO EACH OTHER—HIGHEST GOOD FAITH REQUIRED.—The relation between partners is confidential, and with respect to the firm property and business each is trustee of the other. In the conduct of the business each must act in the highest good faith toward the other, and may not obtain any advantage over him by the slightest misrepresentation or concealment.

ID.—PARTNER ENGAGING IN OTHER BUSINESS.—A general partner who agrees to give his personal attention to the partnership business may not engage in any other business which gives him an interest adverse to that of the firm, or which prevents him from giving to the firm business all the attention which would be advantageous to it. Except as thus bound he may engage in any other business without being accountable to the firm for the profits thereof.

ID.—PARTNER NEED NOT EXTEND INDIVIDUAL CREDIT OR LOAN MONEY TO COPARTNER.—A partner is under no obligation to use his own credit in borrowing money to loan his copartner to go into a business transaction either as a member of the firm or on his own account, and with respect to new enterprises in which the firm has no interest he is not bound to pay money for his copartner as a contribution for the latter to the enterprise.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Woodruff & McClure, and Gibson, Dunn & Crutcher, for Appellant.

Haas & Dunnigan, Hunsaker & Britt, and W. E. Mitchell, for Respondent.

SHAW, J.—Dennis and Gordon were partners doing business under the firm name of Dennis-Gordon Company. The partnership was formed in September, 1907, and was dissolved by mutual consent on January 31, 1910. Dennis thereupon demanded of Gordon an accounting of the partnership business, which was refused. This action was then begun to compel such accounting. An account was rendered

and after it was settled by the court, judgment was given declaring that certain property standing in the name of Gordon was partnership property and that Dennis was the owner of an undivided half thereof, and that certain other property in the name of Gordon or his wife was his individual property in which Dennis had no interest. Dennis appeals from that portion of the judgment which is in favor of Gordon. He also moved for a new trial and he appeals from an order denying the motion.

The property adjudged to belong to Gordon was, first, 17½ shares of the Wellman Oil Company; second, seventy-five thousand shares of the Western Crude Oil Company and fifteen hundred shares of the 32 Oil Company; and third, one hundred thousand shares of the Hale-McLeod Company. The contention of Dennis is that, although the money paid by Gordon in the acquisition of this property was his own and not the money of the firm, yet because he did not inform Dennis fully of the facts concerning it, so that Dennis could take an equal share, and because a part of the consideration upon which Gordon acquired it was services performed and to be performed by Gordon in bettering the property, Gordon was not acting in good faith and holds the property as trustee for the firm and as firm assets. The findings on this point are in general terms, as to each of said parcels, that it. is not a part of the assets of the firm. There were special findings to the effect that Gordon paid one thousand dollars for the property which he exchanged for the shares in the Western Crude Oil Company and in the 32 Oil Company, and that before buying any of the shares he offered to take Dennis in with him on the deal, but that Dennis refused. It is claimed that these findings are not sustained by sufficient evidence.

There is no merit in the preliminary objection of Gordon that the evidence cannot be considered. The order denying a new trial recites that the motion for a new trial was ''presented upon all the grounds stated in the notice of intention to move for a new trial herein, and upon the statement of the case heretofore settled.'' A copy of the notice of intention is printed in the transcript, but it is not authenticated by a bill of exceptions. Hence, it cannot be considered as a part of the record on appeal. (Code Civ. Proc., secs. 661,

951, 952.) But the record contains a bill of exceptions in which the insufficiency of the evidence to sustain these findings is specified. The order denying the new trial does not clearly state that the grounds upon which the motion was made were those specified in the settled statement, and the draftsman apparently failed to observe that the document referred to as a statement of the case, is denominated on its face as a bill of exceptions. But such orders are to be liberally construed and substance, rather than form, is the essential thing. A bill of exceptions setting forth the evidence and proceedings taken at the trial, such as the one in this record, is in no wise distinguishable from a statement of the case. Wherever it is necessary for the ends of justice to do so we will consider the expressions as synonymous. A recital in the order that the motion was presented upon the statement of the case heretofore settled will be deemed sufficient evidence that the objections set forth in the statement were the grounds of the motion. The misnomer whereby the bill was referred to as a statement will be disregarded. Furthermore, upon this point it is to be observed that the record does not show that any notice of the entry of the judgment was ever served upon Gordon's attorneys of record. The party wishing to take advantage of the fact that it was served, for the purpose of preventing a consideration of the evidence on appeal from the judgment taken more than sixty days after its entry, must show that such notice was served more than sixty days before the taking of such appeal. Otherwise the appeal will be considered as having been taken under sections 941a, 941b, and 941c of the Code of Civil Procedure. In such a case, by sections 941b and 941c, the sufficiency of the evidence is reviewable in the same manner as if the appeal had been taken within sixty days of the entry of the judgment under section 939.

The Dennis-Gordon Company was formed without capital. Its business was to be the buying and selling of oil, bonds, stocks, oil leases, and real estate, either for others on commission, or on its own behalf, and the promoting of oil companies and the improvement of oil lands. The principal part of its business, however, was the business of selling property for others on commission. It was successful and profitable, but the profits received in money were immediately divided

between them.    Only a small amount of money was kept on hand, apparently for the purpose of paying current expenses. The agreement of partnership was oral.    It contemplated the buying of lands by the firm as a part of the business, but as there was no capital and no agreement that either should contribute money to the business, it would follow, necessarily, that if any property was bought by or for the firm requiring any considerable sum of money, a new agreement concerning it would have to be made before either would be obliged to contribute of his individual funds for that investment.    Such new agreement might be made informally, as, for example, if either bought property for the firm and the other, after knowledge thereof, acquiesced therein or made no objection thereto.    In that case there would be an implied agreement by each to contribute such additional funds as might be required therefor.

It is conceded that Gordon did not use any partnership funds in acquiring the properties in question, and that the money he paid therefor was his individual property.    The only grounds upon which it is claimed that the property belongs to the firm are, as before stated, that Gordon paid the consideration in part by the performance of services in and about the properties, that his attention thereto prevented him from giving due attention to the firm business, and that he obtained the consent of Dennis that it should not be bought on firm account, by concealing from Dennis the real character of the property or by failing to inform him thereof.

The shares in the 32 Oil Company, in the Western Crude Oil Company and in the Hale-McLeod Company were all obtained in exchange for interests in certain oil lands held by Gordon and transferred by him to those companies.    The 32 Oil Company shares were procured by the transfer of a one-fourth interest in a part of section 32, those of the Western Crude by the transfer to it of a one-fourth interest in a part of section 4; and those in the Hale-McLeod Company by the transfer to it of an interest in lands in sections 28, 34, and 24.    These lands were not all in the same township and range, but their particular location is not important.    The fact of the exchanges of these lands for stocks is of no consequence. The material inquiry is with regard to the acquisition by Gordon of the interests in the lands.    If such interests be-

came firm assets, then the stocks received in exchange would also be firm assets.                                        ,

The lands were all government lands subject to location and acquisition as mineral lands, on condition that oil was discovered therein. The lands in section 32 and section 4 had been located as mineral lands by one McMurtry, but no discovery had been made and they were entirely undeveloped. One McLeod had obtained control thereof and had induced Wheat and Wilson to take each a one-fourth interest with him and was endeavoring to get a fourth man to take another, one-fourth interest. The agreement with McMurtry was in the name of McLeod's wife. McLeod had agreed to drill certain wells thereon for the discovery of oil, in consideration of this contract. These three parties then proposed to Gordon to transfer to him a one-fourth interest with them in the enterprise, he to pay one-fourth of the expenses, estimated at one thousand dollars, and to assist in obtaining other parties to drill the wells. The plan was to erect derricks preparatory to drilling, and then make leases to others who would complete the wells and discover the oil.

Gordon informed Dennis of this proposition, stating to him that the land had to be developed; that it was government land not proved up; that it was a wildcat proposition, and very much of a gamble; and that it would take one thousand dollars if they went into it together; and proposed that if he would go in for one-half of it they would take it for the firm. Dennis refused to go into it, and said, in substance, that the firm should not go into it; that he was without funds to invest in it himself, and that he would not go into anything in which McLeod was interested. Upon this refusal of Dennis, Gordon, on his own behalf, agreed with McLeod, Wheat, and Wilson to take a one-fourth interest with them on the terms proposed. Mrs. McLeod thereupon assigned to Wheat, Wilson, and Gordon, each a one-fourth interest in the land. She apparently held the other one-fourth as trustee for McLeod. The four then began the erection of derricks for drilling wells and sought to find persons who would take leases and drill the same. These were the services referred to as part of the consideration given by Gordon for the property. It does not appear that much of Gordon's time was spent therein or that it seriously interfered with his proper

attention to the affairs of the Dennis-Gordon Company. Gordon's share of the outlay was one thousand dollars. Before expending more, they succeeded in obtaining lessees, who proceeded with the work and drilled the wells. Oil was found and the land at once became valuable. The services of Gordon in this enterprise were all performed after he had made the proposal to Dennis above stated, and after Dennis had refused to go into it. If this refusal was not procured by concealment or misrepresentation, the consent of Dennis that Gordon might go into it on his own account and his refusal to allow the firm to take a part in it would estop him from claiming that Gordon's subsequent reasonable attention to the new enterprise, not materially interfering with his attention to the firm business, should nevertheless inure to the benefit of the firm.

The law governing partnerships is settled by the Civil Code. The relation between partners is confidential. With respect to the firm property and business, each is trustee of the other (sec. 2410). In the conduct of the business each must act in the highest good faith toward the other, and may not obtain any advantage over him by the slightest misrepresentation or concealment (sec. 2411). A general partner who agrees to give his personal attention to the partnership business may not engage in any other business which gives him an interest adverse to that of the firm, or which prevents him from giving to the firm business all the attention which would be advantageous to it (sec. 2436). Except as thus bound he may engage in any other business without being accountable to the firm for the profits thereof (secs. 2437, 2438).

The evidence shows that the statements made by Gordon to Dennis respecting the property were true. The land was undeveloped, it was not known that it contained oil, and if none was discovered all the money and effort expended in it would be a total loss. It was truly a gamble and a speculation. The value afterward shown to be in the property was practically all the result of the money expended and the exertions of the interested parties after they had made their agreement. There is nothing to indicate that Gordon had any greater knowledge of the existence of oil in the land than Dennis had. The latter had not had as much experience as Gordon in the development of oil land, it is true. But

CLXIII Cal —28

he had had some experience in such matters, and had made some deals in oil lands. He does not claim that he was so destitute of common knowledge on the subject that he did not know that a mineral location was valueless if there was no mineral in the land, and that, in order to make an undeveloped oil location on government land of any value, both money and time had to be expended in discovering the oil believed to be contained in it. The information he received was therefore sufficient for him to understand that if he and Gordon went into the speculation together they would have to give to it time and services, as well as money, and that Gordon must do the same if he alone went into it with the other parties. The refusal of Dennis to take an interest and his consent that Gordon alone should do so, was equivalent to an agreement that Gordon should do his part in assisting the independent concern without giving the Dennis-Gordon Company any claim on account thereof.

The evidence does not compel the conclusion that Gordon was acting in bad faith or with the intent to deter Dennis from taking an interest in the property. The finding of the court implies that he acted in good faith and we must take it as true. No effort at concealment is shown to have been made by Gordon, nor is there anything indicating that he did not believe that the land and its prospects were as he represented it to Dennis when he asked him to take a share therein. No money of the firm was used. The fact that the one thousand dollars which Gordon paid was soon returned to him out of the profit is not material. Having the right, under the circumstances, to acquire the interest for himself, he was entitled to the profit as his own. It follows from all these considerations that the court below properly found that the stock for which these lands were exchanged was not a part of the firm assets.

There is no substantial ground for the claim that the Hale-McLeod Company stock is firm assets. McLeod had obtained some interest or right in the three sections above mentioned by an agreement with the original locators that he would protect the locations for them by doing the necessary development work. Several months after the transaction hereinbefore set forth had occurred, McLeod offered Gordon a one-fourth interest in this contract with the locators, for the sum of two thousand one hundred dollars. He also offered to

loan Gordon the money to pay for this interest. Gordon informed Dennis of the offer of the interest and proposed to let him in on the deal on the same terms, but he did not say anything about McLeod offering to loan him the money. He informed him, however, of the condition of the land, the plan contemplated for development and discovery of oil, and that it was his opinion that it was good property and that they would make money on it either in cash or·by acquiring shares in some corporation to be formed with the land as capital. Dennis thereupon stated that he had no money to invest and refused to go into it. There is no evidence that Gordon devoted any time or attention whatever to this enterprise. As a partner of Dennis he was under no obligation to use his own credit in borrowing money to loan to Dennis to enable Dennis to go into the deal either as a member of the firm or on his own account. With respect to new enterprises in which the firm had no interest, he was not bound to pay money for Dennis as a contribution for Dennis to the enterprise. If he had advanced such money, the transaction would have been an individual matter between them and not a part of the firm business. There is no evidence of any concealment by Gordon respecting this property. So far as he appears to have been concerned with it, the business was in no wise adverse to the interests of the firm. No reason appears why he could not buy an interest in it without taking it as firm property.

The shares in the Wellman Oil Company were not firm assets. They were obtained in the following manner: The Western Crude Oil Company, after Gordon became a stockholder therein, obtained a large block of stock in the Wellman Oil Company. It desired to raise funds for its own development work and for that purpose offered to its stockholders the Wellman stock at a fixed price in proportion to their holdings of the Western Crude stock. Gordon took 17½ shares at the price named and paid his own money for them. It was a mere investment of his own funds. His relations to the firm did not make it his duty to offer the property to the firm or to buy it for the firm. It was in no way connected with the firm business nor adverse to its interests.

The judgment and order are affirmed.

Angellotti, J., Sloss, J., Lorigan, J., and Melvin, J., concurred.