[L. A. No. 3457.    In Bank.—March 19, 1915.]

GEORGE N. BLACK and JULIUS R. BLACK, Copartners Doing Business under the Firm Name of BLACK BROTHERS, Appellants, v. CAL F. HUNTER et al., Respondents.

CONTRACT BETWEEN REAL ESTATE AGENTS TO SHARE COMMISSIONS—SUBSTITUTED CONTRACT—DURATION OF PARTNERSHIP RELATION.—Two parties engaged in the business of buying and selling real estate entered into a contract which, after reciting that they had combined to effect the sale of a particular tract of land, and had secured or were securing for that purpose from the owners of the tract authorizations for its sale, contained an agreement for the equal division of what-

ever commission should be received for effecting the sale. They secured such authorizations, limited in duration, from the owners, each of whom contemplated a sale of the tract to a county as a site for a public building. They made the offer, but it was not accepted by the county. Subsequently, upon learning that another real estate agent was offering a rival tract for the same purpose, they and the latter entered into a tripartite agreement, which referred to the former contract, and provided that the party who had been the agent for the rival tract should abandon his rival offer and assist in making a sale to the county of the other tract, and that the commissions received from such sale should be divided between them in equal one-third shares. *Held,* that the second contract was a complete substitute for the first, and that by the terms of both contracts reasonably construed, the copartnerships, or whatever the arrangements between the parties were, were to be circumscribed by the authorizations then made or to be made,—not to others which might be given under a different employment in the future.

ID.—DISSOLUTION OF PARTNERSHIP RELATION BY CONSENT—ABANDONMENT.—The relationship created between the parties to the latter contract, even if one of partnership, could be and was dissolved by the expressed will of the partners and their abandonment of the transaction by common consent.

ID.—INDEPENDENT SALE BY AGENT AFTER ABANDONMENT OF PRIOR PARTNERSHIP AGREEMENT.—After such latter contract had been abrogated and abandoned in good faith, one of the parties to the original contract was entitled to negotiate independently for the sale of the property contemplated by the original contract, and was not accountable to the other for a share of the commissions realized from the sale.

APPEAL from a judgment of the Superior Court of Los Angeles County.   J. P. Wood, Judge.

The facts are stated in the opinion of the court.

Denis & Lowenthal, and E. E. Mellette, for Appellants.

O'Melveney, Stevens & Milliken, and Haas & Dunnigan, for Respondents.

MELVIN, J.—Plaintiffs sued to recover a portion of a fee received by the defendants for negotiating the sale of certain real estate situated in the city of Los Angeles. Defendants answered, denying liability; a trial was had upon the issues joined, and judgment was given in favor of defendants. From this judgment plaintiffs appeal.

The court found that on the twenty-sixth day of January, 1909, the plaintiff copartnership and the defendant Cal F. Hunter entered into a contract which was in the following words and figures:

"This agreement by and between Cal F. Hunter and Black Brothers, both of the city of Los Angeles, recites that

"Whereas said parties have combined to effect the sale for Frank P. Flint, G. Rupert Johnson and Adloff & Hauerwass, respectively, of the properties in said city known as lots Nos. 1, 2, 3, 4, 8 and 9 respectively of the D. G. Stephens Tract, and have secured or are securing for that purpose from the said owners of said properties certain contracts appointing said Cal F. Hunter as sole and exclusive agent for the sale of said properties, it is hereby agreed by and between said parties that whatever commission shall be received by said Hunter for affecting the sale of any or all of said lots shall be divided, by said Hunter and said Black Bros., share and share alike, after deducting any necessary expenses accrued in effecting said sale.

"Dated at Los Angeles, California, this 26th day of January, 1909.

"CAL F. HUNTER,<br>
"BLACK BROS."

It was further found that at the time of the execution of this contract Hunter and Black Brothers were engaged in securing certain exclusive options or agencies for the property described in the agreement from the owners of said land, and that none of said owners contemplated a sale to any other than the county of Los Angeles; that prior to May 12, 1909, Hunter and Black Brothers obtained from the owners of the said property certain agencies and authorities empowering the said Cal F. Hunter to offer the entire tract, which was made up of the holdings of several different owners, to the county of Los Angeles, and that Hunter did make such offer to the county, but that the said county of Los Angeles did not accept it. The court further found that all of the written authorizations empowering Hunter or Black Brothers to sell the properties to the county contained conditions limiting the agencies to definite periods of time in no case extending beyond the tenth day of June, 1909. There was a further finding that on May 12, 1909, Black Brothers, Cal F. Hunter,

and R. A. Rowan & Company entered into the following agreement:

"May 12, 1909.

"This memorandum is to witness:

"That whereas Cal F. Hunter holds certain sole agencies for the sale of the following real property, situate in the City of and County of Los Angeles, State of California, described as follows:

"Lots 1, 2, 3, 4, 8 and 9, D. G. Stevens Tract, and

"Whereas, Geo. N. Black obtained for said Hunter the sole agency for a part of the above described property, and

"Whereas, said Cal. F. Hunter and Geo. N. Black, have entered into an agreement to divide the net commissions received after deducting all expenses from the sale of the above described property, and

"Whereas, Cal F. Hunter has offered to sell to the County of Los Angeles, the property herein above described, for the sum of $220,000, and

"Whereas, R. A. Rowan & Co. have submitted and offered to the County of Los Angeles, the following described property:

"Lots 1, 2, 3, 4, and 5 in Block 'A,' of the Fort Hill Tract, in the City of and County of Los Angeles, State of California, for the sum of $341,500.

"Now, therefore, in consideration of the said R. A. Rowan & Co. dropping their proposition above mentioned, and getting back of, and assisting the said Hunter and Black to sell the property first above mentioned, to the County of Los Angeles, as submitted by said Hunter, it is mutually agreed between the said Hunter, Black and Rowan, that the net commissions so received from the sale of the property offered by said Hunter, shall be divided as follows:

"To the said Rowan, one-third of the net commission.

"To the said Black, one-third of the net commission, and

"To the said Hunter, one-third of the net commission.

"The said Hunter holding said agencies for the sale of the property first above described, is hereby authorized to collect all of the said commissions, when said sale has been completed and shall divide the same immediately upon the

receipt of the same, after deducting such expenses as are incurred in making said sale.

> "CAL F. HUNTER,
> "GEO. N. BLACK,
> "R. A. ROWAN & Co.,
> By J. Hellenbar."

The consideration for this contract was found by the court to be the securing of the services of R. A. Rowan & Co. in carrying out the sale, the revocation of the contract theretofore made by Black Brothers and Hunter and that the second contract was entered into as a substitute for the one between plaintiffs and Hunter. It was further found that, in spite of the efforts of the contracting parties the sale to the county was not made under their agreement; that the county refused to purchase the land; that the agencies from the owners expired and that they refused to renew said authorizations; that on or about September 28, 1909, the parties to the contract of May 12, 1909, with full knowledge of all of the facts and circumstances, agreed to abandon and did abandon that contract. The court found that in January, 1911, the owners of the property mentioned in the complaint and the owners of other adjoining land employed Cal F. Hunter and R. A. Rowan to sell the whole parcel to the county; that in April, 1911, they succeeded in making a sale; and that their commission amounted to five thousand two hundred dollars, to no part of which plaintiffs were entitled, because the said sale was not made pursuant to any contract to which they were parties.

The position of appellants, in brief, is this: The first contract was one of copartnership; the second was not a substitute for it, but merely took Rowan & Co. in to the transaction as an agent of the copartnership; and therefore the cancellation of the second contract (and appellants admit that it is no longer in existence) did not abrogate the original agreement of copartnership. Appellants also insist that Rowan (who was the efficient representative of his corporation, having full knowledge of the relations existing between Black Brothers and Hunter) was bound not to take advantage of the knowledge gained as their agent or employee in making a new contract detrimental to the interests of Black Brothers (citing in this behalf *Gower* v. *Andrew,* 59 Cal. 119, [43 Am. Rep. 242].)

The first and most important question for us to determine relates to the attack made by appellant upon the finding that the contract of May 12, 1909, was a substitute for that of January 26th of the same year. All of the parties to these contracts were men engaged in the business of buying and selling real estate. The evidence shows that G. Rupert Johnson, who owned some land near the corner of Temple and New High streets in the city of Los Angeles, made some attempt to sell the property to the county of Los Angeles as the site for a hall of records. Being unsuccessful he sought the professional services of Mr. George Black, one of the plaintiffs. After some investigation and effort Mr. Black decided that the proper way to dispose of the property was to sell it to the county with two adjoining parcels owned respectively by Adloff & Hauerwass and by the State Loan & Investment Company, a corporation controlled by Senator Flint. Mr. Black broached to Senator Flint the matter of combining the properties for sale and met with encouragement, but on application to Adloff & Hauerwass he learned that Mr. Cal F. Hunter had general charge of their properties. Mr. Black then talked to Mr. Hunter, submitted his plan, suggested that they work together, and the negotiations between them resulted in the contract of January 26, 1909, which we have quoted. Appellants insist that since this contract was not, by its terms, limited to any particular period of time, it could only be abrogated by the solemn dissolution of the copartnership. Part of the consideration, they say, was Mr. Black's "idea" for the consolidation and sale of the properties. This was part of the capital, they affirm, and for such investment as well as for Mr. Black's efforts to accomplish the sale, he acquired an interest in the adventure of which he has never been lawfully deprived. The contract itself does not reveal anything with reference to the authorship of the scheme of sale. It merely recites that the signers have combined to effect such sale, that they have secured or are securing certain authorizations looking to such desired consummation, and that such commissions as might be received for a sale of the premises would be equally divided between the parties. This copartnership, if we may so name it, was to have for its capital, so far as the terms of the agreement reveal its scope, the joint efforts of the copartners and the agencies from the owners.

Mr. Black and Mr. Hunter made an offer of the property to the supervisors, but they then learned that R. A. Rowan & Company were agents for a rival tract. After consultation the Blacks and Mr. Hunter concluded that it would be good policy to take Mr. Rowan into the compact, and negotiations were opened with that end in view, culminating in the agreement of May 12, 1909. An examination of that agreement fully justifies the court's finding that it entirely superseded the contract between Hunter and the Blacks. It recites the fact that Mr. Black has obtained for Hunter the sole agency for a part of the property; that Hunter and Black have agreed to divide the commissions from the sale of the property; that Hunter has made a definite offer of the property at a certain figure to the county; that Rowan & Company have submitted certain other property for sale to the county; and then names the consideration moving from Rowan & Company,—namely, the abandonment of the rival offer and the assisting of Hunter and Black in making the sale of the property "as submitted by said Hunter" to the county of Los Angeles. On their part Hunter and Black concede a part of their prospective commissions to Rowan & Company. This plainly shows the intent that the latter should be in lieu of the earlier contract. Black and Hunter took the Rowans into their venture on an equal footing to consummate that particular sale under the very options or authorizations that were being sought when the original agreement was made in January. By the terms of both contracts, reasonably construed, the copartnerships, or combined efforts, or whatever we may call the arrangements, were to be circumscribed by the authorizations then made or to be made—not by others which might be given under a different employment in the future. We conclude, therefore, that the second of these contracts was a complete substitute for the first.

Without reviewing it in detail, we may say that there was evidence justifying the court in the finding that the options or agencies from the owners of the property expired, but even if this were not shown there was abundant and uncontradicted evidence that the tripartite contract was wholly abandoned. It is not in dispute between Rowan, Hunter, and George Black that they met in the fall of 1909 and agreed to terminate the relationship evidenced by the contract of May 12th. They differ only regarding the method adopted.

Mr. Black testified that they destroyed the written agreements themselves. (The contract had been drawn in triplicate.) The others denied this physical destruction, but agreed that nothing further was done looking to the sale of the properties until January, 1911, when the new contracts of agency were secured. Both Rowan and Hunter agreed that it was well understood between the three that the deal for which they had become associated had failed. The testimony of all of the participators justified the court in holding that the transaction was abandoned by common consent about September, 1909. Styling the relationship as one of partnership, as plaintiffs insist that it was, it could be and was dissolved by the expressed will of the partners. (Code Civ. Proc., sec. 2450, subd. 2.)

There was no claim on behalf of plaintiffs that the defendants were guilty of fraud in the transactions of September, 1909. All of the parties knew that the supervisors of the county had refused to consider the purchase of the land at that time. The agreement to abandon the enterprise was made, therefore, in full view of all of the circumstances, and none of the parties to the original contract or to the one substituted for it was bound to consult or consider his former associates in making future business arrangements. When the contracting parties had agreed to dissolve their relations the obligation to confide the private affairs of one to another had ceased to exist. For this reason the cases cited by appellants in support of the contention that defendants owed the highest good faith to plaintiffs are not in point. For example, *King* v. *Wise*, 43 Cal. 633, involved the misconduct of a person who, having been commissioned by his associates to acquire property, fraudulently took a profit from their funds. *Humburg* v. *Lotz*, 4 Cal. App. 438, [88 Pac. 510], was an action between persons who were admittedly partners, one of whom had made a secret gain from the funds of his associates. *Berry* v. *Colborn*, 65 W. Va. 493, [17 Ann. Cas. 1018, 64 S. E. 636], is based upon entirely different facts. That decision held that the person who consummated the sale and received the commission had assented to a cancellation of written authority to sell, hoping thereby to eliminate his associates. Then, under a verbal authority to dispose of the property, he immediately proceeded on his own account to carry through the transaction. In the case at bar there had

been an abandonment of the enterprise for many months and there was no showing of bad faith in such abandonment. There is nothing to prevent a party to an abrogated agreement, which has been abandoned in good faith, from negotiating independently for the property contemplated by the original contract. (*Commercial Bank* v. *Weldon,* 148 Cal. 602, [84 Pac. 171.)

No other points made in the briefs require consideration.

The judgment is affirmed.

Lorigan, J., Henshaw, J., Sloss, J., Shaw, J., and Angellotti, C. J., concurred.

Rehearing denied.