[Civ. No. 4000. Fourth Dist. Aug. 29, 1950.]

AIR PURIFICATION, INC., Respondent, v. PAUL CARLE et al., Appellants.

Pat A. McCormick and Floyd H. Norris for Appellants.

Luce, Forward, Lee & Kunzel and Chas. L. Nichols for Respondent.

GRIFFIN, J.—Plaintiff corporation brought this action for declaratory relief seeking to establish a constructive trust covering a patent application and asked the court to decree that the plaintiff was the true and actual owner thereof and that the defendants assign and deliver the same to the plaintiff. The trial judge prepared his own findings and found generally that in October, 1947, one Ray, defendant Paul Carle, and one Hardy, entered upon and engaged in a joint venture to invent and turn to account devices for the purification of air, including devices for impelling the movement of air, gases and liquids, and to protect all such devices with all possible patent protection, for their joint and mutual benefit; that they jointly filed an application for patent No. 20256 in 1948, embracing the ideas and inventions theretofore conceived by them in the course of said joint venture; that about that time one Van Keuren and one Nelson joined in said joint venture with the mutual consent of all concerned

and that they organized plaintiff corporation for the purpose of taking over and carrying on said joint venture, and each coadventurer assigned his interest in said joint venture and became the owner of shares of capital stock of plaintiff corporation in proportion to his interest in the joint venture; that thereafter the application for the patent above mentioned was assigned to plaintiff corporation which now owns it; that plaintiff took over and carried on the business of said joint venture; that the shareholders became and ever since have been officers and directors of plaintiff corporation and defendant Carle was at all times and still is a director and vice president of that corporation; that each of the parties agreed orally to continue to devote his best talents and efforts and necessary time in furtherance of the aforesaid inventions of plaintiff and its business affairs to the end that each of them should enjoy the fullest measure of financial benefit therefrom.

The court then specifically found:

"That prior to the 23rd day of November, 1948, and in violation of his fiduciary obligation to plaintiff, defendant Paul Carle wrongfully and surreptitiously undertook to conceive in his own behalf certain improvements and refinements upon and relating to the inventions and devices of plaintiff, and in so doing made use of materials belonging to plaintiff for such experimentations. That on said date of November 23, 1948, defendant Paul Carle caused to be filed in his own behalf an application for patent No. 61679 covering such new improvements and innovations, all of which relate to and are intended to achieve the same end results as the inventions and devices of plaintiff but simply contemplate the use of varying means and methods."

It was then found that an actual controversy did exist in respect to patent No. 61679 and the inventions covered thereby; that the plaintiff is the true and equitable owner of and entitled to all of the benefits of that patent as applied for by the defendant, and all amendments and improvements thereon, and that defendant, as trustee, is accountable to plaintiff for its use and benefit.

Defendants' attack is directed to the quoted portion of the findings above recited and they argue that the uncontradicted evidence shows that there were no surreptitious acts on the part of the defendant Carle; that in truth and fact he acted in the utmost good faith with his coadventurers at all times, as evidenced by the fact that when he had first conceived

the idea for patent No. 61679, in the latter days of May, 1948, he made a full disclosure to Ray and Van Keuren and insisted that they adopt his idea and that they proceed to erect a rotor along the principles suggested by him, to the exclusion of everything else; that the remaining members of the corporation rejected his ideas and therefore he was entitled and at liberty to develop his ideas after a full disclosure to plaintiff corporation and its officers, and was then authorized to build, in his own private capacity, a rotor designated as No. 5, at his own expense, and that said rotor, the patent rights thereon and the rights thereto, became his own individual property, and that the trial court had no right or jurisdiction to award these rights to plaintiff.

For a proper determination of this issue it will be necessary to review some portions of the evidence bearing on the subject.

In 1947, defendant Carle and his two joint adventurers developed the idea of encasing a power driver rotor or blower in a housing, injecting a fluid into the air stream thus created to emulsify the dust, dirt, etc., and passing such stream through a condenser to eliminate the fluid and emulsion thereby permitting clean air to be discharged from the other side of the air cleaner. Such a machine was built and was referred to as "Form No. 1." While testing it the parties discovered it would eliminate smoke. This machine did not create a satisfactory emulsion and the parties decided to build another in order to correct this condition. Ray suggested placing closely spaced rings or plates perpendicular to and around the rotor in order to bring the water and impure air into more intimate contact thereby securing proper emulsification. Another model was similarly built but only one ring or plate was built into it. This reflected marked improvement despite the fact that multiple plates or rings were not used. However, instead of following up Ray's idea, Hardy and defendant Carle built a new model based on the original idea, referred to as "Form No. 2." Additional working capital was needed. In this connection they brought Van Keuren into the joint venture to assist Ray in his efforts to sell such air cleaner. Van Keuren interested Nelson in the project. Nelson put up $15,000 to continue the work for a 15 per cent interest in the business or of any corporation thereafter to be formed by the parties to take over and carry out the joint venture. This money was distributed to the remaining members, including defendant Carle, "as eating money" and a portion

was retained for the purchase of material and carrying on the program. In 1948, Form No. 2 was tested by the corporation. Its cleaning efficiency was found satisfactory but was not economical. Later the corporation was formed. The Union Oil Company desired to have the Stanford Research Institute test the air cleaner so the parties constructed Forms No. 3A and 3B, which contained plates and spacers. Later, Hardy withdrew from the venture because of some disagreement in ideas with defendant Carle and he sold his interest to Nelson. After Forms No. 3A and 3B were completed they were taken to the university at Palo Alto for testing. No. 3B was brought back by defendant Carle for the purpose of further testing and it was then decided to build a new model. Defendant Carle wanted one made with all rings; the others wanted one made so that rings and plates would be interchangeable. The duty and responsibility of designing and building the new model was entrusted to defendant Carle. He built Form No. 4 containing a series of alternating plates and rings which created a tortuous or interrupted passage through the cleaner. Ray and Van Keuren were out of town endeavoring to interest prespective buyers of air cleaners in the new device. In August, 1948, Ray caused two drawings to be made showing his ideas about a series of rings, one showing the rings staggered in a plane and in the other the rings were all in the same plane. In October, 1948, the parties continued to test Form No. 4, and about this time defendant Carle absented himself from the plant where the work was being carried on. Ray phoned him daily, advising him of the progress of the tests they were making on Form No. 4. Carle did not give his coadventurers any intimation as to what, if any, work he was carrying on during his absence. About two weeks later defendant Carle phoned Ray and invited him to call at his home. Upon arriving Carle showed Ray a model, Form No. 5, which defendant Carle stated he had built with staggered rings separated by spacers.

Thereafter, Van Keuren and Nelson were called in by defendant Carle and had similar discussions with him. Ray testified that Carle then told him Form No. 5 was a great improvement over what plaintiffs were doing and that he thought he would take out an application for a patent in his own name. He further testified that this form conformed to the ideas he represented on his drawings and that if Carle should take out a patent it should be assigned to the corporation. Ray told Carle that it was not a new invention but

merely one of the new improvements or refinements they had all been discussing for some time. Carle told Van Keuren that before he would assign any rights in and to his new invention the corporation stock would have to be reallocated with different amounts of shares for each stockholder, with Carle holding the majority of the stock. Van Keuren told him that he did not believe that he had invented anything new; that he had only improved on their present cleaner and that any member of the joint venture might have perfected some improvement as a result of his efforts, such as he and Mr. Ray had done in perfecting the condenser. Apparently no final arrangements were completed in this respect.

The testimony of Van Keuren and Nelson is that the only difference between Form No. 4 and Form No. 5 was that in Form No. 4 the rings were separated by plates and in Form No. 5 the rings were separated by spacers. Ray described Form No. 5 as being similar to the drawings he had previously made about his own ideas as to rings being staggered in a plane.

Although it is denied by defendant Carle, there is evidence that certain materials belonging to plaintiff, such as the motors, the pump, and the saw mandrel type bearing, spacers, rings, plates, base plates, etc. were used by defendant in the construction of his claimed Form No. 5. The evidence further indicates that thereafter plaintiff built a model designated as Form No. 5, which was similar to Form No. 5 built by defendant Carle, took it to Pasadena for testing; that defendant Carle went along for the purpose of the tests; and plaintiff paid all of the expenses of the trip.

Thereafter, Carle stated that he had about reached the end of his ropes financially and that some more money would have to be brought in if the work was to be continued. Nelson, with the knowledge and consent of Carle, put up another $5,000. It was not until December, 1948, that plaintiff discovered that defendant Carle had filed an application for a patent on this so-called new invention. Thereafter, this action was instituted to establish a constructive trust in respect to the returns of this patent right.

The evidence clearly shows that the object and purpose of the formation of the joint venture was to develop and perfect an efficient air cleaner and that the efforts of all parties should be expended to this end. There is testimony that when the new members were brought into the joint venture all agreed that the men, other than Mr. Nelson, would ''put in their time

and efforts toward the objective of developing an air cleaner capable of receiving adequate patent protection and thereby being saleable or licenseable'' and that Mr. Nelson then said in their presence: ''You are not committing me to do anything but even if I get an idea I will give it to the corporation.'' There is testimony that ''Mr. Carle brought up the subject and stated 'We have got to have $25,000 to carry this work on. We must have eating money and we must have development money for buying materials, etc. to carry it through to the point of where we can get adequate patents and saleability of our rights, or licensing of our rights';'' that Hardy said ''Van (Van Keuren), if you will bring in the money and if you will agree to put in your time toward sales as we will put in our time toward further development, let's divide all of the 85 per cent four ways . . . Mr. Carle expressed in substance that that suited him;'' that it was there very clearly stated that the assets of the corporation would be ''the proposed assignment of a patent, process of a patent application to be filed and such suggestions and outgrowths to it as would be indicated and advised by the patent attorneys, and that it was proposed those be assigned to the corporation as assets for which we would receive the necessary stock.''

Defendant Carle admits the existence of a joint venture and that he was an officer of plaintiff corporation organized to carry out the purposes of such joint venture; that he was one of the incorporators and at all times a director thereof. He admits that, as a member of this joint venture and as an officer of the corporation, he was required to act in the utmost good faith towards his coadventurers. (*San Francisco Iron etc. Co.* v. *American Milling etc. Co.*, 115 Cal.App. 238, 248 [1 P.2d 1008].) He was thereby accordingly barred from taking or claiming any profit or obtaining any secret advantage from plaintiff in his dealings with it, and any attempt to enrich himself by virtue of his fiduciary obligation to it would be at once obnoxious to the principles of equity. (*Andrews* v. *Bush*, 109 Cal.App. 511, 517 [293 P. 152].) The principle is well established that where one coadventurer gains an advantage for himself under such conditions he becomes a constructive trustee for his coadventurers. (*MacIsaac* v. *Pozzo*, 26 Cal.2d 809 [161 P.2d 449]; *Swarthout* v. *Gentry*, 62 Cal.App. 2d 68 [144 P.2d 38]; *Koyer* v. *Willmon*, 150 Cal. 785 [90 P. 135].) In the latter case it was held that where a partnership was entered into for the purpose of buying a particular lot of land, each of the partners occupies the position of a trustee

to the other with regard to all the partnership transactions, including the transactions contemplated by the firm and constituting the object or purpose for which the partnership was formed, and if one of the partners, after securing an option on the lot while acting for the firm, subsequently purchased it in his own name and with his individual money, he becomes a constructive trustee for his copartner to the extent of the latter's interest in the partnership.

Likewise, in *Hendrickson* v. *California Talc Co.*, 55 Cal.App. 2d 467 [130 P.2d 806], this court held that a trust relationship is inherent in such an association for a common purpose, and one of the parties will not be allowed to deal with the subject matter of the association for his own advantage.

The force of defendant's argument is that the remaining members of the corporation rejected the ideas incorporated in defendant's Form No. 5, and therefore he was at liberty to proceed, in his own name, to obtain such a patent right and to appropriate it to his own use, and that when he walked out of the meeting in which he claims such ideas were rejected by the others, it constituted an oral termination of the joint venture insofar as he was concerned. In support of these contentions he cites such cases as *Ford & McNamara, Inc.* v. *Wilson,* 119 Cal.App. 475 [6 P.2d 996] ; *Irer* v. *Gawn,* 99 Cal. App. 17 [277 P. 1053] ; *Gudebrod* v. *Ward's Administrator,* 165 Va. 444 [182 S.E. 118] ; *Black* v. *Hunter,* 169 Cal. 632 [147 P. 463] ; *Dennis* v. *Gordon,* 163 Cal. 427 [125 P. 1063] ; *Neilsen* v. *Holmes,* 82 Cal.App.2d 315 [186 P.2d 197] ; and *Gillan* v. *Stansbury,* 97 Cal.App.2d 502 [217 P.2d 1016]. The general holding of the cases examined is to the effect that the relationship of joint adventurers may be terminated by mutual consent. It does not appear in the instant action that defendant Carle in fact terminated his relationship in the joint venture or in the corporation. So far as the record shows, he still owns stock in the corporation and is still an officer thereof and participated in the demonstration of Form No. 5, with the possibility of a sale by the corporation of the rights accrued thereunder.

In *San Francisco Iron etc. Co.* v. *American Milling etc. Co., supra,* it was held that where no time is fixed for the termination of a joint venture, the agreement remains in full force until its purpose is accomplished or until it is definitely ascertained that its purpose cannot be accomplished, and while the agreement is in force neither party has a right to withdraw

on the ground that it is no longer advantageous to him, or for the purpose of acting independently to the exclusion of his coadventurers.

The evidence clearly supports the claimed objectionable finding that defendant Carle wrongfully undertook to conceive, in his own behalf, certain improvements and refinements and, from the facts related, the court might well find that the defendant surreptitiously undertook to do so.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.